EDYTHE L. R. DYER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dyer v. Commissioner
Docket No. 29998-88
United States Tax Court
T.C. Memo 1990-51; 1990 Tax Ct. Memo LEXIS 49; 58 T.C.M. (CCH) 1321; T.C.M. (RIA) 90051; January 30, 1990
Calvin E. True, for the petitioner. Robert M. Finkel and Gerald J. O'Toole, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's 1983 and 1984 Federal income tax in the amount of $ 29,298 and $ 42,525, respectively. This case was submitted fully stipulated pursuant to Rule 122. [1] The stipulation of facts, its supplement and exhibits attached thereto are incorporated by reference. The only issue [2] before *50 us is whether petitioner is entitled to deductions in 1983 and 1984 [3] for a charitable contribution of certain property to the Town of Hampden, Maine. FINDINGS OF FACT Petitioner, Edythe L. R. Dyer, was a resident of Hulls Cove, Maine, when the petition in this case was filed. Petitioner owned 30 acres of land in Hampden, Maine (the "Town"). Prior to 1983, petitioner constructed a house on the land intending to use it as her home. In February 1983, having never lived in the house, petitioner decided to donate the house and two and one-half acres of surrounding land (collectively "the Property") to the Town for use as a library. Petitioner communicated her desire in a letter from *51 her son, John B. Dyer, to the Town Manager of Hampden. On March 8, 1983, petitioner and the Town entered into a lease agreement and a separate option agreement. Under the terms of the lease, the Town was to pay annual rent of $ 10,000 to petitioner. Pursuant to a prior separate understanding, petitioner promised to make charitable contributions of at least $ 10,000 per year in support of the library. The lease was to run for one year and thereafter from year to year subject to the right of either party to cancel the lease. Petitioner reserved the right to inspect the Property and to make such repairs or improvements petitioner deemed necessary. No alterations or additions could be made to the Property without prior consultation with petitioner. Any alterations or additions made by the Town were to become the Property of petitioner upon termination of the lease. The Town could not assign, sublease, or otherwise encumber the Property. The Town, pursuant to the terms of the lease, paid all real estate taxes and municipal assessments. The Town also maintained, at its own expense, the interior and exterior of the Property. With petitioner's permission, the Town incurred some *52 expense to renovate the Property so it was suitable to house a library. The Town was maintaining insurance on the Property in petitioner's name with a carrier suitable to petitioner. Despite the lease's terms, the Town never paid any rent on the Property. Further, petitioner never made any payments for support of the library pursuant to the promise discussed above. The Town was given an option to purchase the Property at any time during the running of the lease for one dollar. The option could be terminated by petitioner at any time. The option further provided "subsequent to any exercise of said option by the [Town] th[e] Optionor [petitioner] may, at Optionor's sole election, defer the closing and the delivery of a deed for a period of time not to exceed three (3) years." During the deferral period the lease was to remain in "full force [a]nd effect." While leasing the Property, the Town began transforming the Property into a library. The Town moved its library from the local high school to the Property. A librarian was hired on a full-time basis, the Town Council passed an ordinance establishing the library as an official Department of the Town, and the Town amended *53 its insurance policy to include the Property. [4]
On October 18, 1983, the Town Manager informed petitioner that the Town would exercise its option. The deed transferring the Property to the Town pursuant to the terms of the option was not recorded until January 30, 1987. The deed was delivered on December 31, 1986, but was dated December 31, 1985. Between the exercise of the option and the date of the deed, petitioner and the Town conducted their relationship as they had before the exercise of the option, i.e., approval of petitioner was sought by the Board of Trustees before any action was taken to change the character of the Property. OPINION Pursuant to section 170(a) there is allowed as a deduction any charitable contribution, payment of which is made within the taxable year. A contribution is made at the time delivery is effected. Sec. 1.170A-1(b), Income Tax Regs.
In determining the *54 existence and timing of a charitable contribution, the analysis applied is the same as the analysis applied in determining the existence and timing of a gift. DeJong v. Commissioner, 36 T.C. 896 (1961), affd. 309 F.2d 373 (9th Cir. 1962). This Court has consistently held the six essential elements of a bona fide inter vivos gift are: 1) a donor competent to make a gift; 2) a donee capable of accepting a gift; 3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of title, domain, and control of the subject matter, in praesenti; 4) the irrevocable transfer of present legal title and dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; 5) delivery by the donor to the donee of the gift or of the most effectual means of commanding the dominion of it; and 6) acceptance of the gift by the donee. Weil v. Commissioner, 31 B.T.A. 899, 906 (1934), affd. 82 F.2d 561 (5th Cir. 1936), cert. denied 299 U.S. 512 (1936); Guest v. Commissioner, 77 T.C. 9, 16 (1981). *55 The parties agree to the applicability of the test set forth in Weil supra. They also agree the first two elements were satisfied. Respondent maintains the four remaining elements were not satisfied by petitioner in 1983 or 1984; therefore, there can be no deduction for those years. Petitioner maintains all six elements of the Weil test have been met. Petitioner bears the burden of proof. Rule 142. We agree with respondent. Our holding rests upon petitioner's failure, in the taxable years in question, to irrevocably transfer present legal title and dominion and control of the entire gift to the Town so that petitioner could not exercise any further act of dominion or control over it. All six of the above-referenced elements must be satisfied. Weil supra. Because we find the third element cited above was not satisfied, it is unnecessary to consider the remaining three elements. A contribution or gift is deemed to be made when delivered. Sec. 1.170A-1(b), Income Tax Regs. *56 The regulations, however, fail to guide us as to when delivery is considered complete for income tax purposes. Therefore, we must look to state law. Brotzler v. Commissioner, T.C. Memo. 1982-615. See Greer v. Commissioner, 70 T.C. 294 (1978), affd. on another issue 634 F.2d 1044 (6th Cir. 1980); Alioto v. Commissioner, T.C. Memo. 1980-360. Under the law of Maine, it is clear "a deed must be delivered in order for a conveyance of title to occur." Paine v. Paine, 458 A.2d 420 (Me. 1983); Hood v. Hood, 384 A.2d 706, 707 (Me. 1978). In Paine v. Paine, supra, the Court defined delivery as "that point in time at which the parties manifest their intention to make the instrument an operative and effective integration of their agreement." Paine v. Paine, supra at 421. In this case, it is clear petitioner did not intend the deed to be operative in 1983 or 1984. The terms of the option specifically provided the transfer of the deed could be deferred *57 by petitioner for as many as three years after the option was exercised, and during the interim period the lease would remain operative. While Maine law will allow the parties to introduce "extrinsic evidence that they did not intend the writing to be a complete integration of their understanding," ( Paine v. Paine, supra at 421) extrinsic evidence will be of no help to petitioner in this case. During the period between exercise of the option and physical delivery of the deed, both the Town and petitioner continued their relationship in accordance with the lease. The Town continued to seek permission from petitioner before making any changes or improvements to the Property; petitioner objected to certain changes and exercised her dominion and control by seeing that the changes were not made; petitioner was still named as an insured on the Property; and the Town Council recognized the Town did not yet hold legal title to the Property. The Town's actions are inconsistent with ownership of the Property but consistent with the terms of the lease. Such actions indicate petitioner's continued ownership and dominion and control over the Property throughout 1983 *58 and 1984. Petitioner cites a litany of cases, maintaining Maine as well as many other jurisdictions recognize the validity of the doctrine of parol gift as a means of gifting realty. Thompson v. Dart, 746 S.W. 2d 821, 825 (Tex. Ct. App. 1988); Tozier v. Tozier, 437 A.2d 645, 648-49 (Me. 1981); French v. French, 125 Ariz. 12, 606 P.2d 830 (Ariz. Ct. App. 1980), Locke v. Pyle, 349 So. 2d 813 (Fla. Dist. Ct. App. 1977). These cases are easily distinguishable from the instant case. In the instant case there is no parol or oral promise. The agreement between the Town and petitioner was reduced to writing (the lease agreement and the option agreement) which very clearly delineates the rights and obligation of each party. Both parties complied with the written agreement. We acknowledge altruistic behavior such as petitioner's makes a very compelling case for ignoring the plain language of the law and finding for petitioner. However, we are bound by the words of the statute. "In the field of statute law the judge must *59 be obedient to the will of [Congress] as expressed in its enactments. In this field [Congress] makes, and un-makes, the law: the judge's duty is to interpret and to apply the law, not to change it to meet the judge's idea of what justice requires." Duport Steels Ltd. v. Sirs [1980], I.C.R. 161, 189. We find petitioner did not deliver the property in 1983 or 1984 [5] and hold for respondent. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code, as amended and in effect for the years in issue. ↩
2. The issue concerning the value of the property purportedly donated was severed by Order of the Court dated March 23, 1989. ↩
3. Petitioner asserts the contribution of the property occurred in 1983. Taxable year 1984 is involved pursuant to the carryover of excess contributions rules in section 170(d)↩.
4. The policy named petitioner as an "additional named insured."↩
5. We make no finding whether petitioner is entitled to a deduction for a charitable contribution in 1985 or 1986 because these years are not before us.↩